**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------x
LONNIE PEARSON,

                Petitioner,      :     **REPORT & RECOMMENDATION**

                        :

      v.                       **11 Civ. 3452 (BSJ)(MHD)**

                        :
STEVEN RACETTE,

                        :
               Respondent.
----------------------------------x

**TO THE HONORABLE BARBARA S. JONES, U.S.D.J.:**


     Petitioner Lonnie Pearson seeks a writ of habeas corpus to challenge his 2008 judgment of conviction in New York State Supreme Court, New York County, on two counts of first-degree robbery, one count of second-degree robbery, two counts of criminal possession of a weapon in the third degree, and one count of menacing in the second degree. The court adjudicated him to be a persistent violent felony offender and sentenced him to concurrent prison terms of twenty-five years to life on the three robbery counts, three-and-a-half to seven years on the criminal-possession counts, and a one-year jail term for menacing, which merged as a matter of law with the state prison sentences. Petitioner is currently incarcerated at Elmira Correctional Facility in Chemung County, New York.


     Pearson filed his petition pro se on May 10, 2011. (Petition

1

for a Writ of Habeas Corpus by a Person in State Custody ("Pet.") 1). He asserts three grounds in support of his application. First, he argues that the trial judge erroneously deprived him of his "absolute right" to poll the jury. Second, he contends that, in violation of the Fourteenth-Amendment guarantee of due process, he was denied a fair trial when the trial judge refused defense counsel's request to charge third-degree robbery as a lesser-included offense of first-degree robbery. Finally, petitioner asserts that the trial court's refusal to charge third-degree robbery further compromised his constitutional right to a fair trial insofar as its corrosive influence extended beyond the robbery convictions to taint the jurors' approach to the possession and menacing charges in a so-called "spillover effect."

Respondent opposes the petition. Polling the jury, respondent contends, is not a constitutional right and, in any case, this claim is procedurally barred. Respondent also argues that the Appellate Division properly rejected petitioner's lesser-included-offense claims and stresses that, in any event, these claims are not cognizable on habeas review.

For the reasons that follow, we recommend that the writ be denied and the petition dismissed.

2

I. Prior Proceedings

Pearson's conviction stemmed from the robbery of a Duane Reade drugstore on West 23rd Street in Manhattan on May 30, 2007. Two men entered the premises and stole a quantity of wristwatches on sale there, and then fled from the store after threatening two security guards with a knife. Police officers seized petitioner, as the other man fled, and the guards then identified him on the street as the knife wielder.

On June 15, 2007 a New York County grand jury indicted Pearson on two counts of first-degree robbery, one count of second-degree robbery, two counts of third-degree criminal possession of a weapon, and one count of second-degree menacing. The two counts of first-degree robbery stem from two grounds established by New York Penal Law § 160.15:

> A person is guilty of robbery in the first
> degree when he forcibly steals property and
> when, in the course of the commission of the
> crime or of immediate flight therefrom, he or
> another participant in the crime . . .   is
> armed with a deadly weapon . . . [or] uses or
> threatens the immediate use of a dangerous instrument.

In delimiting second-degree robbery, section 160.10(1) of New York

3

Penal Law provides in relevant part that "[a] person is guilty of robbery in the second degree when he forcibly steals property and when . . . [h]e is aided by another person actually present."

A. The Trial

Petitioner's jury trial commenced before the Honorable Edward J. McLaughlin, S.C.J. on December 11, 2007. (Trial Transcript ("Tr.") at 1). At trial, the prosecution called as witnesses the two security guards, the manager of the store, and two police officers. The prosecution also presented footage of the robbery compiled from the security cameras of the store. The defense called no witnesses.

1. The State's Case

The prosecution called five witnesses: Rubin Espinal and Jairo Polanco, who work as loss-prevention agents for Duane Reade; Arssath Uthumalebbe, who manages the Duane Reade that was robbed; and Police Officers Jose Valentin and Vincent Weiss,[1] who responded to the robbery and helped apprehend petitioner Lonnie Pearson.

---

[1] Officer Weiss's first name is not mentioned in the trial transcript.

Collectively, the witnesses testified to the following.

On the morning of May 30, 2007, Mr. Espinal and Mr. Polanco were working at the Duane Reade store at 140 West 23rd Street (Tr. at 36:12-22, 78:2-12), as was Mr. Uthumalebbe. (Tr. at 96:16-19). At around 10:50 a.m., Mr. Espinal and Mr. Polanco were at a deli, on a break from work, where the former purchased coffee and the latter procured breakfast. (Tr. at 37:9-18, 78:16-18).

During that time, Mr. Uthumalebbe remained in his office in order to complete payroll for the employees. (Tr. at 96:20-25). Mr. Uthumalebbe's computer sits next to the monitor on which images from the store's security cameras can be viewed. (Tr. at 96:7-15, 97:1). At around 10:50 a.m. Mr. Uthumalebbe noticed something on the security monitor -- two people were in the cosmetics aisle, trying to break the watch case. (Tr. at 97:2-10).[2] The manager suspected that he was witnessing "some kind of theft," and he therefore called both the loss-prevention officers and the police. (Tr. at 97:14-25).

---

[2] Mr. Espinal testified that it appeared on the security camera footage as if petitioner "[had taken] a nail clipper from one of the shelves to open the lock." (Tr. at 55:6-18).

5

Mr. Espinal received a call on his cell phone while he and Mr. Polanco were at the deli -- it was from Mr. Uthumalebbe, who informed the two loss-prevention agents that there were "two subjects stealing watches inside the store." (Tr. at 37:19-38:5, 78:19-25). Upon receiving that call, Mr. Espinal and Mr. Polanco returned to the store. (Tr. at 38:6-7, 79:1-4). While Mr. Polanco waited outside, near the left exit (Tr. at 79:8-12), Mr. Espinal entered the store and went to the manager's office to look at the security monitor. (Tr. at 38:6-21). On the live video feed, Mr. Espinal saw that two men were stealing watches from a rack. (Tr. at 38:22-39:24). While Mr. Uthumalebbe remained in the office watching the monitor (Tr. at 99:4-10), Mr. Espinal went back outside the store to wait with Mr. Polanco for the men. (Tr. at 40:1-17).

As Mr. Uthumalebbe was watching, the two men broke into the display case and began to fill a bag with watches. (Tr. at 99:11-15). He then "[s]aw both of them stepping about, both subject[s], with the bag. Then [Mr. Espinal and Mr. Polanco], they came in. They had something going on." (Tr. at 99:21-25). Mr. Uthumalebbe began to run toward the front of the store, but by the time he arrived the two men had left. (Tr. at 99:25-100:8).

Mr. Espinal testified that during the time between the theft

6

and the men's flight, he saw the man whom petitioner had called his "partner" (Tr. at 46:12-13) approach the front door. (Tr. at 41:18-23). He described the events that ensued as follows: he stopped petitioner's partner; petitioner arrived waving a knife and threatening to kill him; he released the partner and told them that they could go; and petitioner, after lobbing a few more threats, left with his partner. (Tr. at 43:24-44:17, 46:9-14, 47:4-5). Mr. Polanco similarly stated that "[w]hen we apprehended one of them, the other one came out of nowhere, pulled out a knife." (Tr. at 80:4-5). Mr. Espinal described the knife as a "pocketknife" about "four or five" inches big. (Tr. 45:7-18). At trial, both Mr. Polanco and Mr. Espinal identified petitioner as the man who had brandished the knife. (Tr. at 63:4-20, 80:10-23).

The security-camera footage of the encounter apparently does not conclusively demonstrate the presence of the knife. The prosecutor conceded that though the video shows that petitioner's arm was raised in a way that suggests he was holding something, it is impossible to see what he was holding. (Tr. at 212:8-213:6). The prosecutor asserted, however, that although the contours of the object are not discernable, one can easily conclude that the object was a knife by the guards' reaction -- "the 300 pounds, six . . . foot Rubin Espinal" released petitioner and backed away. (Tr. at

7

47:7-12, 213:7-25). Petitioner and his partner left the store, bringing with them the bag of watches. (Tr. at 47:13-18, 57:20-23).

Officer Valentin, moreover, found a switchblade near the scene of the crime, right next to the bag of watches. (Tr. at 122:22-123:3). He had received a "radio run" directing him to Duane Reade; when he and his partner arrived about two minutes later (Tr. at 116:17), they saw that two other officers were already there -- they had captured petitioner and were in pursuit of his partner. (Tr. at 114:22-115:3, 118:9-119:8, 164:6-13). Officer Valentin joined the officer holding petitioner, and when Mr. Espinal and Mr. Polanco arrived about five minutes later (Tr. 50:2-5) and identified petitioner as "the one that had the knife in his hand," Officer Valentin placed petitioner under arrest. (Tr. at 49:23-50:1, 119:12-20, 131:16-17). Shortly thereafter, Officer Valentin found the bag of watches and the knife approximately fifteen to thirty feet away. (Tr. at 122:22-123:1). Mr. Espinal and Mr. Polanco identified the watches as belonging to Duane Reade and the knife as the one with which petitioner had threatened them. (Tr. at 125:19-126:2).

8

## 2. The Defense Case

Mr. Pearson did not call any witnesses at trial. Defense counsel relied on cross-examination of the prosecution witnesses and a pointed summation to present her theory of the case. In her summation, defense counsel offered an extended argument to the effect that the trial testimony did not conclusively connect petitioner to the knife, and that the surveillance video did not show a knife or weapon, nor did it reveal any use of force by petitioner. (E.g., Tr. at 201:3-202:24). Although there may have been "some verbal nonsense," defense argued (Tr. at 201:23), the "evidence adds up [only] to two guys going into a Duane Reade store . . . and stealing a bunch of watches." (Tr. at 201:8-11).

## B. The Jury Charge

After the judge dismissed the jury for the day on December 11, 2007 (Tr. at 168:14-18), he asked defense counsel whether she "[w]ant[ed] to make a trial order of [dismissal] motion."[3] (Tr. at

---

[3] In New York State criminal procedure, "[a]t the conclusion of the people's case or at the conclusion of all the evidence, the court may . . . upon motion of the defendant, . . . issue a 'trial order of dismissal,' dismissing any count of an indictment upon the ground that the trial evidence is not legally sufficient to establish the offense charged therein or any lesser included offense." N.Y. Crim. Proc. Law § 290.10.

168:19-20). Defense counsel replied that the prosecution had failed to prove its case based on two theories. First, Ms. Sender argued that the State could not prove that petitioner "actually possessed that switchblade knife." (Tr. at 170:4-5); second, she posited "that the evidence fails to establish beyond a reasonable doubt that force was used for the specific purpose of either overcoming resistance to the taking of property or the retention of property afterwards." (Tr. 170:14-19). The judge denied defendant's motion, concluding that issues of fact remained. (See Tr. at 172:24-173:5).

After denying defense counsel's motion, the judge moved the discussion to the jury charge, asking the attorneys what they would like him to charge. (Tr. at 173:6-12). The prosecuting attorney requested that the judge charge "acting in concert." (Tr. at 173:13-14). Defense counsel opposed the request and then requested that he charge three lesser-included offenses -- "petty larceny, larceny, harassment in the second degree and robbery in the third degree." (Tr. at 175:13-17). The judge asked: "What's the evidence of force that does not involve a weapon and does not involve a second person[?]" (Tr. at 175:18-20). When defense counsel suggested that "the Judge could conceivably find my client was just pushing past the guard so, therefore, the use of force was there and that the other co-defendant was not involved in that they just

10

came and barreled through," the judge rejected this theory. (Tr. at 175:21-176:6). He stated that, "[g]iven the videotape[, he was] not going to charge robbery in the third degree." (Tr. at 176:2-3). Ultimately, the judge also declined to charge harassment, but did charge petit larceny. (Tr. at 176:7-177:12).

In relevant part, the trial judge charged the jury on December 12, 2007, as follows:

> With respect to the first charge, Count one on the indictment which is described, robbery in the first degree, it is that during the course of the forcible stealing of the property on that date, the defendant possessed as defined by the law, as [sic] a deadly weapon . . . including a switchblade knife.
>
> . . . .
>
> So in this instance, what is described as a knife, first count, described a switchblade knife, the second count a knife, first element of the second charge robbery also is called robbery in the first degree the defendant forcibly stole property and the second element is he was armed with a dangerous instrument, that is, a knife which under the circumstances under which it was used or threatened to be used was readily capable of causing either serious physical injury or death.
>
> The third charge on the verdict sheet [is] something called robbery in the second degree has nothing whatsoever to do with weapons or the possession of weapons by any alleged participant but rather the first common element, you know it by now, forcibly stole property as the second element is that during

11

the course of the robbery the defendant on
trial was aided by somebody actually present.

. . . .

If you decide based on your assessment of the
facts that there was no force, then your
verdict of course would be not guilty as to
Count One, not guilty as to Count Two, not
guilty as to Count Three. You will notice on
the verdict sheet after Count Three is
something called petty larceny. If your
verdicts, as I say, are not guilty, not
guilty, not guilty, then you're asked to
decide whether the defendant alone or in
concert stole property.

. . . .

The fourth charge relates [] to what
supposedly is the possession of the
switchblade.

. . . .

The fifth charge also says possession of a
weapon in the third degree. It relates to the
same attempt. It doesn't call it a
switchblade, but it calls it a knife and says
that the defendant possessed it . . . .
intending to use it unlawfully against another
person.

. . . .

The final charge on the verdict sheet is
something call[ed] menacing . . . .

(Tr. at 240:3-245:9). After charging the jury, the judge called the

attorneys to the side bar to ask if they had any "exceptions or

requests." (Tr. at 247:4-5). Defense counsel's only comment was: "I

would also ask that the robbery counts, the threat of force that

you make clear it's immediate use of force, not just the general
out there someday I'm going to come back, but it has to be
immediate." (Tr. at 247:15-19). The court acceded to her request.
(Tr. at 247:21).

After terminating the side-bar conference and completing the
jury charge (Tr. at 255:5-259:20), the judge again invited the
attorneys to "step in" for a discussion. (Tr. at 259:21). Defense
counsel raised concerns that the jurors had notepads and pencils
(Tr. at 260:1-2), and that the judge should clarify that the nail
clippers with which petitioner had opened the watch case -- should
the jury determine that the clippers were what petitioner was
holding in the video -- would not suffice to support a knife-
related offense. (Tr. at 260:5-261:11). She did not, however, raise
any of the arguments mentioned in the present petition.

C. Verdict

After being sent to deliberate, the jurors returned later that
day with a unanimous verdict. (Tr. at 262:5-6). They found
petitioner guilty on all of the six counts of the indictment: two
counts of robbery in the first degree and of criminal possession of
a weapon in the third degree, and one count each of robbery in the

13

second degree and menacing in the second degree. (Tr. at 262:6-263:2).

As soon as the jury foreperson reported that the jurors had found petitioner guilty on the sixth count, an audience member cried out: "You cost him his life. You cost him his life." (Tr. at 263:3-4). The judge immediately intervened:

> THE COURT: Take him out. Jury, you're excused. Thank you very much for your service. January 9th for sentence. [Petitioner is] remanded. Take him up. [The audience member who cried out is] going to be allowed to leave, but I'm going to talk to him first. Because he's just cost his brother, I guess, a right which is a stupid blank thing to do. Take him upstairs. Bring him up. He's going to walk out, but he's going to hear this first. You sit right there. He can sit there. Are you, in fact, [petitioner's] brother?
>
> MR. PEARSON: Yes.
>
> THE COURT: All right.
>
> Now, I'm not persuaded that you didn't understand what was happening. Your brother's got five felony convictions. He's cut people about five times with knives, so this isn't a surprise.
>
> Now, after a guilty verdict I could have asked each of the 12 people whether that was their individual verdict. But because you tried to persuade somebody among them to change, because you called them a liar, your brother has forfeited that right. Now get out of here. Get out of here.

14

(Tr. at 263:5-264:7).

   D. Sentence

   During the sentencing proceedings, which took place on January 9, 2008, the trial judge told petitioner that he was "in[corrigible]," "unremorseful," "a disaster," and that he was "finished as far as [his] ability to harm Duane Reade employees or anybody else that [he] decide[s] is an apt victim for [his] foolishness." (Sentencing Transcript ("Sen.") 20:21-25). Emphasizing that the petitioner is a "mandatory violent predicate felon" (Sen. 22:12-13), the judge sentenced him to twenty-five years to life on the two counts of first-degree robbery; twenty-five years to life on the second-degree robbery count; twenty-five years to life for criminal possession of a weapon; and twenty-five years to life for possession of a weapon in the third degree. (Sen. 22:12-23:2). The judge announced, with respect to the sixth and final count: "I'm embarrassed to say I don't know what level felony menacing in the second degree is. If it's a felony, your sentence is 25 years to life." (Sen. 23:3-5). Shortly thereafter, the judge declared that "menacing apparently is a misdemeanor and the sentence is one year and it's concurrent." (Sen. 23:16-18). The judge that "[a]ll the sentences [were] concurrent." (Sen. 23:18).

15

He then further amended the sentence for criminal possession of a weapon to three-and-a-half to seven years on counts four and five. (Sen. 24:1-3). The record reflects that defense counsel was present in the courtroom as he altered the sentence. (Sen. 24:3-5).

E. <u>The Appeal</u>

Petitioner sought to challenge his conviction and sentence on direct appeal to the First Department. (Decl. in Opp'n to the Pet. for a Writ of Habeas Corpus ("Fleischmann Decl.") Ex. A, at i). In support of his appeal, petitioner asserted three grounds. First, he complained that the trial court had improperly discharged the jury in response to the cries of his brother, thereby depriving him of his "absolute right" to conduct a jury poll. (<u>Id.</u> at 11). Second, he claimed that he had been denied due process because the trial court declined to charge third-degree robbery as a lesser-included offense (<u>Id.</u> at 21). Third, he asserted that the trial court's error in failing to charge third-degree robbery as a lesser-included offense had tainted his convictions for criminal possession of a weapon in the third degree and menacing in the second degree, mandating reversal. (<u>Id.</u> at 26). All three of these grounds are reiterated in the present petition.

16

On November 24, 2009, the First Department affirmed petitioner's conviction and sentence. See People v. Pearson, 67 A.D.3d 600, 889 N.Y.S.2d 179 (1st Dep't 2009). The court rejected the jury-poll argument because this claim had not been preserved via objection. Id. at 600, 889 N.Y.S.2d at 180. The court also explained that the record failed to support defendant's contention that the jury had been discharged in such haste that he had been precluded from requesting that the jury be polled. Id. As for petitioner's argument regarding the lesser-included offense of third-degree robbery, the court affirmed the trial court's finding that no evidence supported the threat of violence other than the use of a knife. Id. at 600-01, 889 N.Y.S.2d at 180. The court also found that witness testimony and the discovery of a knife outside the store sufficiently supported the knife theory. Id. at 601, 889 N.Y.S.2d at 180-81. Because petitioner's third claim hinged upon a favorable finding with respect to the second claim, the appellate court's decision does not touch upon the spillover claim. See id. In sum, the appellate court "unanimously affirmed" petitioner's conviction and sentence. Id. at 600, 889 N.Y.S.2d at 180.

In a letter dated December 3, 2009, petitioner sought leave to appeal to the New York Court of Appeals on all three issues that were presented on direct appeal. (Fleischmann Decl. Ex. E, at 2).

17

The prosecution opposed that application (<u>see</u> <u>id.</u> Ex. F), and on March 18, 2010, the Court of Appeals denied leave. (<u>See</u> <u>id.</u> Ex. G).


F. <u>The Present Petition</u>


Petitioner finally turned to this court, filing a <u>pro</u> <u>se</u> habeas corpus petition on May 10, 2011. (Pet. 1). This petition requests habeas review on the same three claims that petitioner presented on direct appeal -- the deprivation of the right to poll the jury; the refusal to charge third-degree robbery as a lesser-included offense; and the spillover taint from the allegedly erroneous refusal to charge robbery in the third degree upon petitioner's convictions for criminal possession of a weapon in the third degree and menacing in the second degree. (<u>Id.</u> at 16-17).


ANALYSIS


I. <u>Habeas Standards</u>


A. <u>Exhaustion</u>


The habeas statute provides that a court shall not grant a habeas application "unless it appears that . . . the applicant has

18

exhausted the remedies available in the courts of the State."[4] 28 U.S.C.A. § 2254(b)(1)(A). "'[E]xhaustion of state remedies requires that [a] petitioner fairly present federal claims to the state courts in order to give the [s]tate the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'" Carvajal v. Artus, 633 F.3d 95, 104 (2d Cir. 2011) (alterations in original) (quoting Duncan v. Henry, 513 U.S. 364, 365 (1995)). An applicant must present his ineffective-assistance challenge in terms that are "'likely to alert the [state] court[s] to the claim's federal nature.'" Cornell v. Kirkpatrick, 665 F.3d 369, 375-76 (2d Cir. 2011) (alterations in original) (quoting Lurie v. Wittner, 228 F.3d 113, 124 (2d Cir. 2000)). More specifically, a petitioner must have: "(i) presented the federal constitutional claim asserted in the petition to the highest state court (after preserving it as required by state law in lower courts) and (ii) informed that court (and lower courts) about both the factual and legal bases for the federal claim." Ramirez v. Att'y Gen. of N.Y., 280 F.3d 87, 94 (2d Cir. 2001).

---

[4] The statute lists two further means of exhausting state-court claims, namely by showing that "there is an absence of available State corrective process; or . . . circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C.A. § 2254(b)(1)(B)(i)-(ii). These other options are inapplicable to this case.

Even if a claim may be deemed potentially unexhausted, the habeas statute gives the federal court discretion to bypass the exhaustion question if it determines that the claim clearly lacks merit. 28 U.S.C. § 2254(b)(2); see also Hall v. Phillips, 2007 WL 2156656, at *14 (E.D.N.Y. July 25, 2007) (quoting Angel v. Garvin, 2001 WL 327159, at *8 (S.D.N.Y. Apr. 3, 2001)) ("A habeas petition may be denied 'where the allegations are insufficient in law, undisputed, immaterial, vague, conclusory, palpably false, or patently frivolous.'"); Galberth v. New York, 2007 WL 633953, at *4 (S.D.N.Y. Feb. 28, 2007) (dismissing a claim that was "not fully exhausted" in part because it was meritless); Brown v. Walker, 275 F. Supp.2d 343, 352 (E.D.N.Y. 2003) (refusing to grant habeas relief for a "claim [that was] not exhausted but [was] meritless").

B. Standard of Review

The stringency of federal habeas review under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") turns on whether the state courts have passed on the merits of the petitioner's claim, that is, whether the decision of the highest state court to consider the claim is "based on the substance of the claim advanced, rather than on a procedural, or other, ground." Sellan v. Kuhlman, 261 F.3d 303, 311 (2d Cir. 2001) (discussing 28 U.S.C. § 2254(d)). If the state court has addressed the merits,

20

then the petitioner may obtain relief only if the state court's ruling "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); see, e.g., Bell v. Cone, 535 U.S. 685, 693-94 (2002); Williams v. Taylor, 529 U.S. 362, 412-13 (2000); Howard v. Walker, 406 F.3d 114, 121-22 (2d Cir. 2005); Brown v. Artuz, 283 F.3d 492, 498 (2d Cir. 2002). "[I]f the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of law and mixed findings of fact and conclusions of law are reviewed de novo.'" Dolphy v. Mantello, 552 F.3d 236, 238 (2d Cir. 2009) (quoting Spears v. Greiner, 459 F.3d 200, 203 (2d Cir. 2006)).

"Clearly established federal law 'refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision.'" Howard, 406 F.3d at 122 (quoting Kennaugh v. Miller, 289 F.3d 36, 42 (2d Cir. 2002)). "[A] decision is 'contrary to' clearly established federal law 'if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court

21

decided a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.'" Id. (alterations in original) (quoting Williams, 529 U.S. at 413).

What constitutes an "unreasonable application" of settled law is a somewhat murkier proposition. "'A federal court may not grant habeas simply because, in its independent judgment, the "relevant state-court decision applied clearly established federal law erroneously or incorrectly."'" Id. (quoting Fuller v. Gorczyk, 273 F.3d 212, 219 (2d Cir. 2001) (quoting Williams, 529 U.S. at 411)). The Supreme Court observed in Williams that "unreasonable" did not mean "incorrect" or "erroneous," noting that the writ could issue under the "unreasonable application" provision only "if the state court identifies the correct governing legal principle from [Supreme] Court[] decisions but unreasonably applies that principle to the facts of the prisoner's case." 529 U.S. at 410-13. The Second Circuit has interpreted this language to mean that while "'[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence.'" Monroe v. Kuhlman, 433 F.3d 236, 246 (2d Cir. 2006) (internal quotation marks omitted) (quoting Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (quoting Matteo v.

22

Superintendent, SCI Albion, 171 F.3d 877, 889 (3d Cir. 1999))).

The Supreme Court's most recent decision on this issue reflects a seemingly narrower view of what constitutes an "unreasonable" application of federal law. It states that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 131 S. Ct. 770, 786 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). "Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. Under this more recent interpretation, a federal habeas court has "authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" Supreme Court precedent. Id. In other words, to demonstrate an "unreasonable" application of Supreme Court law, the habeas petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood

23

and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 786-87.

As for the state court's factual findings, under the habeas statute "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Richard S. v. Carpinello, 589 F.3d 75, 80-81 (2d Cir. 2009); McKinney v. Artuz, 326 F.3d 87, 101 (2d Cir. 2003); see generally Rice v. Collins, 546 U.S. 333, 338-39 (2006).

We also note that petitioner is proceeding pro se, requiring that we consider his submissions liberally and construe them in his favor. Simmons v. Abruzzo, 49 F.3d 83, 87 (2d Cir. 1995) (citing Haines v. Kerner, 404 U.S. 519, 520 (1972)). Thus we must read them to "'raise the strongest arguments that they suggest.'" Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)).

II. The Jury-Poll Claim

Petitioner asserts that the trial judge erroneously deprived

24

him of the opportunity to poll the jury following the outburst by his brother. No audience member, petitioner contends, can forfeit a party's "absolute right" to conduct a jury poll. Petitioner stresses, moreover, that the judge's immediate dismissal of the jury precluded objection by defense counsel and thus made it impossible to preserve the claim. Although petitioner cites no constitutional grounds for this claim, we may, in light of petitioner's status as a <u>pro</u> <u>se</u> litigant, read his papers as seeking to invoke the Fourteenth Amendment right to due process.

Respondent contends that the jury-poll claim is unexhausted and procedurally barred. He further asserts that the claim is not cognizable on habeas review.

We conclude that petitioner's jury-poll argument is not cognizable upon habeas review, inasmuch as there exists no constitutional right to a jury poll. We further conclude that the claim is procedurally barred.

A. <u>Petitioner's Claim is Not Cognizable</u>

"It is well established that a federal habeas court does not sit to correct a misapplication of state law, unless such

25

misapplication violates the Constitution, laws, or treaties of the United States." Ponnapula v. Spitzer, 297 F.3d 172, 182 (2d Cir. 2002) (citation omitted); see also Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (citing 28 U.S.C. § 2241); Redd v. Woughter, 2012 WL 2864514, at *5 (S.D.N.Y. July 12, 2012); Hall v. Phillips, 2007 WL 2156656, at *10 (E.D.N.Y. July 25, 2007); Hsu v. Cunningham, 2006 WL 938729, at *4 (S.D.N.Y. Apr. 11, 2006). Indeed, "[f]ederal habeas review is limited to claims that a prisoner's conviction violated the Constitution, laws or treaties of the United States." Evans v. Poole, 2005 WL 2847769, at *1 (S.D.N.Y. Oct. 31, 2005) (citing 28 U.S.C. § 2254(a); Estelle, 502 U.S. at 67-68).

In petitioner's state-court briefing, he invoked New York Criminal Procedure Law § 310.80[5] and New York State caselaw as the

---

[5] New York Criminal Procedure Law § 310.80 provides that:

> After a verdict has been rendered, it must be recorded on the minutes and read to the jury, and the jurors must be collectively asked whether such is their verdict. Even though no juror makes any declaration in the negative, the jury must, if either party makes such an application, be polled and each juror separately asked whether the verdict announced by the foreman is in all respects his verdict. If upon either the collective or the separate inquiry any juror answers in the negative, the court must refuse to accept the verdict and must direct the jury to resume its deliberation. If no disagreement is expressed, the jury must be discharged from the case,

basis for his assertion that he was wrongfully denied a right to have the jury polled. (See Fleischmann Decl. Ex. A, at 11-20). His reliance on state law is not surprising since federal law gives no such right to defendants in state court.

"Although polling the jury is a common practice, we know of no constitutional right to have a poll conducted." Cabberiza v. Moore, 217 F.3d 1329, 1336-37 (11th Cir. 2000) (citing United States v. Miller, 59 F.3d 417, 419 (3d Cir. 1995); Jaca Hernandez v. Delgado, 375 F.2d 584, 585 (1st Cir. 1967); Madera v. Risley, 885 F.2d 646, 647-48 (9th Cir. 1989); Hatcher v. Jackson, 853 F.2d 212, 214 (3d Cir. 1988)); see also United States v. Sturman, 49 F.3d 1275, 1282 (7th Cir. 1995) (citing United States v. Randle, 966 F.2d 1209, 1214 (7th Cir. 1992)) ("The right to poll a jury is indeed a substantial right, but it is not a constitutional right."); Kincade v. Wolfenbarger, 2007 WL 1364709, at *10 (E.D. Mich. May 9, 2007 (citing Humphries v. D.C., 174 U.S. 190, 194-96 (1899)) ("[T]he failure to poll a jury is not fatal to the judgment and does not render the verdict a nullity.")), aff'd, 324 F. App'x 482 (6th Cir. Apr. 20, 2009).

---

[except in certain enumerated circumstances].

Because petitioner's jury-poll claim is devoid of support based in federal law, it cannot be reviewed by our habeas court. Accordingly, on this basis it must be dismissed.

### B. Petitioner's Jury-Poll Claim is Procedurally Barred

Respondent principally argues that the jury-poll claim is procedurally barred for two separate reasons. First, he asserts that Pearson failed to exhaust his state-court remedies because he articulated the claim in his appellate brief solely in state-law terms, and since he has no currently available means for invoking the same claim in state court in constitutional terms, the claim should be subjected to procedural-bar analysis, which would dictate that it be deemed procedurally barred. (Resp't's Mem. of Law in Opp'n to the Pet. for a Writ of Habeas Corpus ("Res. Mem.") 14, 18). Second, he contends that the claim is directly procedurally barred because the Appellate Division explicitly found the claim to be unpreserved, see Pearson, 67 A.D.3d at 600, 889 N.Y.S.2d at 180, and Pearson fails to demonstrate the applicability of any of the exceptions to procedural bar that are recognized in habeas jurisprudence. (See Res. Mem. 15-18).

We choose to bypass the exhaustion issue, as permitted by 28

28

U.S.C. § 2254(b)(2), because the claim, even if it had been articulated as one purportedly arising under federal law, is plainly subject to rejection on other grounds -- including both the absence of a federal-law basis, as we have observed, and the fact that it is subject to procedural bar based on Pearson's failure to preserve it under New York's contemporaneous-objection rule.[6]

"The Second Circuit has not yet established a standard for denying unexhausted claims under 28 U.S.C. § 2254(b)(2), but all four districts in New York have applied the 'patently frivolous' test for dismissing such claims." Singleton, 2012 WL 1301268 at *3 n.2 (citing Toland v. Walsh, 2008 WL 820184, at *11-12 (N.D.N.Y. Mar. 26, 2008); Hammock v. Walker, 224 F. Supp.2d 544, 549 (W.D.N.Y. 2002); Cruz v. Artuz, 2002 WL 1359386, at *8 (E.D.N.Y. June 24, 2002); Love v. Kuhlman, 2001 WL 1606759, at *5 (S.D.N.Y. Dec. 12, 2001)). "Ultimately, the court should consider whether it would be 'a waste of judicial resources . . . to send a petitioner back to the state courts to present to them claims that are clearly

---

[6] In this regard, we again note that "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in" state court. See 28 U.S.C. § 2254(b)(2); Pratt v. Greiner, 306 F.3d 1190, 1197 (2d Cir. 2002); Singleton v. Lee, 2012 WL 1301268, at *3 & n.2 (W.D.N.Y. Apr. 16, 2012); Spurgeon v. Lee, 2011 WL 1303315, at *1 (E.D.N.Y. Mar. 31, 2011).

frivolous.'" Love, 2001 WL 1606759, at *5 (quoting Colon v. Johnson, 19 F. Supp.2d 112, 120 (S.D.N.Y. 1998)).

We have already noted that the jury-poll claim finds no support in federal law and hence is not cognizable in this proceeding. As an alternative matter, we conclude that it is also procedurally barred.

### 1. Procedural Bar Standards

#### i.   Independence and Adequacy

If the highest state court to address a federal-law claim disposed of it on a "state law ground that is independent of the federal question and adequate to support the judgment," a petitioner may not obtain habeas review unless he demonstrates both cause for his default and prejudice or else establishes that a failure to address the claim would constitute a fundamental miscarriage of justice. See, e.g., Coleman v. Thompson, 501 U.S. 722, 729 (1991); Jimenez v. Walker, 458 F.3d 130, 136 & n.3 (2d Cir. 2006) (quoting Harris v. Reed, 489 U.S. 255, 260 (1989)); see also Martinez v. Ryan, --- U.S. ----, 132 S. Ct. 1309, 1316 (2012) ("A state court's invocation of a procedural rule to deny a

prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed.").

To be independent, the state court's holding must rest on state law that is not "interwoven with the federal law." Jimenez, 458 F.3d at 137 (quoting Mich. v. Long, 463 U.S. 1032, 1040-41 (1983)). Since it can be "'difficult to determine if the state law discussion is truly an independent basis for decision or merely a passing reference,' . . . reliance on state law must be 'clear from the face of the opinion.'" Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 809 (2d Cir. 2000) (quoting Coleman, 501 U.S. at 732, 735). When determining whether we may entertain a claim, "[w]e apply a presumption against finding a state procedural bar and 'ask not what we think the state court actually might have intended but whether the state court plainly stated its intention.'" Galarza v. Keane, 252 F.3d 630, 637 (2d Cir. 2001) (quoting Jones v. Stinson, 229 F.3d 112, 118 (2d Cir. 2000)).

As for adequacy, the state procedural requirement must be "'firmly established and regularly followed by the state in question' in the specific circumstances presented in the instant

case." <u>Murden v. Artuz</u>, 497 F.3d 178, 192 (2d Cir. 2007) (quoting

<u>Monroe v. Kuhlman</u>, 433 F.3d 236, 241 (2d Cir. 2006)); <u>see</u> <u>Lee v.</u>

<u>Kemna</u>, 534 U.S. 362, 376 (2002); <u>Cotto v. Herbert</u>, 331 F.3d 217,

239 (2d Cir. 2003) (quoting <u>Garcia v. Lewis</u>, 188 F.3d 71, 77 (2d

Cir. 1999)). However, even "[s]tate rules that are firmly

established and regularly followed will not foreclose review of a

federal claim where the particular application of the rule is

'exorbitant.'" <u>Brown v. Lee</u>, 2011 WL 3837123, at *5 (S.D.N.Y. Aug.

30, 2011) (quoting <u>Kemna</u>, 534 U.S. at 376). In assessing adequacy,

the Second Circuit has adopted from <u>Kemna</u> three general

considerations as pertinent to the analysis. These are:

> (1) whether the alleged procedural violation
> was actually relied on in the trial court, and
> whether perfect compliance with the state rule
> would have changed the trial court's decision;
> (2) whether state caselaw indicated that
> compliance with the rule was demanded in the
> specific circumstances presented; and (3)
> whether petitioner had "substantially
> complied" with the rule given "the realities
> of trial," and, therefore, whether demanding
> perfect compliance with the rule would serve a
> legitimate governmental interest.

<u>Murden</u>, 497 F.3d at 192 (quoting <u>Cotto</u>, 331 F.3d at 240). In making

this determination, the federal court defers to the state courts,

and should find a state procedural-default ruling adequate as long

as it has a "'fair or substantial basis' in state law." <u>Garcia</u>, 188

F.3d at 78 (citing, inter alia, Arce v. Smith, 889 F.2d 1271, 1273
(2d Cir. 1989)). It bears emphasis that "[b]ecause of comity
concerns, a decision that a state procedural rule is inadequate
should not be made 'lightly or without clear support in state
law.'" Murden, 497 F.3d at 192 (quoting Garcia, 188 F.3d at 77).


                    ii.  Exceptions: Cause and Prejudice;
                         Fundamental Miscarriage of Justice


     Requisite jurisprudential deference notwithstanding, "[t]he
doctrine barring procedurally defaulted claims from being heard is
not without exceptions. A prisoner may obtain federal review of a
defaulted claim by showing cause for the default and prejudice from
a violation of federal law." Martinez, 132 S. Ct. at 1316. So, too,
may a petitioner secure habeas review of his otherwise procedurally
barred claims if he demonstrates that failure by the habeas court
to consider the claims would result in a fundamental miscarriage of
justice. Coleman, 501 U.S. at 749-50; Jimenez, 458 F.3d at 138.


     The Supreme Court has defined "cause" to mean an "objective
factor external to the defense" that impeded the defendant's
efforts to comply with the state procedural rules. Murray v.
Carrier, 477 U.S. 478, 488 (1986); Strickler v. Greene, 527 U.S.
263, 283 n.24 (1999) (quoting Murray, 477 U.S. at 488). Cause may

                                 33

be demonstrated by "a showing that the factual or legal basis for a claim was not reasonably available to counsel," that "interference by officials . . . made compliance impracticable," or that "the procedural default is the result of ineffective assistance of counsel." Murray, 477 U.S. at 488 (internal quotations and citations omitted); see, e.g., Restrepo v. Kelly, 178 F.3d 634, 640 (2d Cir. 1999); Bossett v. Walker, 41 F.3d 825, 829 (2d Cir. 1994).

Even if a habeas petitioner can establish cause, he must also show that he suffered actual prejudice. See Coleman, 501 U.S. at 750. To demonstrate prejudice, the petitioner must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170 (1982) (emphasis in original); see, e.g., Rodriguez v. Mitchell, 252 F.3d 191, 203-04 (2d Cir. 2001); Holland v. Scully, 797 F.2d 57, 69 (2d Cir. 1986).

The only other exception to the procedural-bar rule applies if the petitioner demonstrates that the habeas court's refusal to consider the merits of his procedurally barred claim would result

34

in a "fundamental miscarriage of justice." <u>Coleman</u>, 501 U.S. at 750. This "rare" exception is reserved for the "'extraordinary case[] where a constitutional violation has probably resulted in the conviction of one who is actually innocent . . . .'" <u>Schlup v. Delo</u>, 513 U.S. 298, 321 (1995) (quoting <u>Murray</u>, 477 U.S. at 496); <u>see also</u> <u>Doe v. Menefee</u>, 391 F.3d 147, 160-61 (2d Cir. 2004). Moreover, the petitioner is expected to establish actual innocence based on new evidence rather than what was presented at trial. <u>See</u>, <u>e.g.</u>, <u>Schlup</u>, 513 U.S. at 327, 329.

### 2. The Jury-Poll Claim is Barred

Here, the ground upon which the Appellate Division dismissed petitioner's jury-poll claim is New York Criminal Procedure Law § 470.05(2), which permits New York appellate courts to decline to consider claims not preserved by objection or explicit exception. <u>See</u> <u>Pearson</u>, 67 A.D.3d at 600, 889 N.Y.S.2d at 180. The Appellate Division applied New York's contemporaneous-objection rule because defense counsel neither requested a jury poll nor objected to the judge's dismissal of the jury without a poll. <u>Id.</u> The court also expressly "decline[d] to review the claim in the interest of justice." <u>Id.</u>

35

It is a tenet of federal jurisprudence that a state court's decision not to review a claim that a party failed to preserve during the course of a trial may suffice to bar habeas review. Indeed, the Supreme Court has long supported such determinations because "[a] contemporaneous objection enables the record to be made with respect to the constitutional claim when the recollections of witnesses are freshest, not years later in a federal habeas proceeding." Wainwright v. Sykes, 433 U.S. 72, 88 (1977); see also Whitley v. Ercole, 642 F.3d 278, 288 (2d Cir. 2011). In pellucid terms, the Court has held that:

> [i]n all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice . . . . We now recognize the important interest in finality served by state procedural rules, and the significant harm to the States that results from the failure of federal courts to respect them.

Coleman, 501 U.S. at 750.

The particular rule in question in this case, New York Criminal Procedure Law § 470.05, itself has a compelling history of

36

approval by federal courts. See, e.g., Garvey v. Duncan, 485 F.3d 709, 720 (2d Cir. 2007) (noting that "§ 470.05(2) is a state-law ground on which the New York appellate court's decision is based, and that ground is both independent of any federal question and adequate under firmly established and regularly followed state law"); Walker v. Conway, 2007 WL 3015220, at *2 (W.D.N.Y. Oct. 12, 2007) (affirming Magistrate Judge's determination that the state appellate court's rejection of a party's non-preserved claim under section 470.05(2) was an adequate and independent holding that "barr[ed] further habeas corpus review . . . [because] New York courts demand strict compliance and enforce this contemporaneous-objection rule"); Acosta v. Miller, 2005 WL 3358673, at *2 (S.D.N.Y. Nov. 30, 2005) (holding that even when "challenged language is . . . flatly contrary to law," trial counsel's failure to object "doomed [appellant's] state court appeal on this ground"); Rodriguez v. Sabourin, 274 F. Supp.2d 428, 432-33 (S.D.N.Y. 2003) (noting that "[t]he Second Circuit has consistently recognized the state courts' application of NYCPL § 470.05 as adequate to bar federal habeas review, . . . and has held that failure to object at trial in accordance with this rule constitutes an adequate and independent state ground to dismiss a claim." (internal citation omitted)).

37

Against this backdrop of presumptive independence and
adequacy, we must nevertheless examine whether the court's reliance
on section 470.05(2) was independent and adequate in the specific
circumstances of this case. See generally Garvey, 485 F.3d at 720
(examining the independence and adequacy of the application of §
470.05 in that case).

i. Independence

There can be no question that the appellate court's decision
not to review petitioner's jury-poll claim constituted an
independent state-law ground. The court relied solely on New York
Criminal Procedure Law § 470.05(2) in making that decision:

> Defendant did not preserve his claim that the
> court failed to poll the jury after it
> rendered its verdict, and we decline to review
> the claim in the interest of justice. The
> better practice would have been to address the
> spectator's outburst and then poll the jury.
> Nonetheless, defendant did not request that
> the jury be polled before it was discharged,
> during the process of discharging it, or at
> any other time. The record fails to support
> defendant's assertion that the court
> discharged the jury in such haste that
> defendant had no opportunity to request
> polling. To the extent that defendant is
> arguing that once the court said the word
> 'discharged,' it would have lacked authority
> to retract that statement and poll the
> still-present and intact jury had defendant

38

                    made a prompt request for polling, we reject
                    that argument.

Pearson, 67 A.D.3d at 600, 889 N.Y.S.2d at 180 (citations omitted).

In addition to this discussion centered around the concerns

addressed by § 470.05(2), the appellate court explicitly invoked

the rule, observing that, "[f]urthermore, the [trial] court did not

'in re[s]ponse to a protest by a party, . . . expressly decide[]'

that defendant was not entitled to poll the jury." Id. (quoting

N.Y. Crim. Proc. Law § 470.05(2)); see Cox v. Bradt, 2012 WL

2282508, at *20 (S.D.N.Y. June 15, 2012) ("The Second Circuit has

'held repeatedly' that CPL § 470.05(2), New York's contemporaneous

objection rule, is an independent and adequate state procedural

ground, which is 'firmly established and regularly followed.'"

(quoting Downs v. Lape, 657 F.3d 97, 104 (2d Cir. 2011))); accord

Whitley, 642 F.3d at 286-87; Richardson v. Greene, 497 F.3d 212,

217 (2d Cir. 2007); Garvey, 485 F.3d at 718; Taylor v. Harris, 640

F.2d 1-2 (2d Cir. 1981) (per curiam).


                    ii. Adequacy


    "In New York, the 'firmly established and regularly followed

rule,' is that 'points which were not raised at trial may not be

considered for the first time on appeal.'" Major v. Warden, Attica

Corr. Facility, 2012 WL 75791, at *3 (W.D.N.Y. Jan. 10, 2012)

(internal citation omitted) (citing <u>Kemna</u>, 534 U.S. at 386; <u>People</u> <u>v. Thomas</u>, 50 N.Y.2d 467, 471, 429 N.Y.S.2d 584, 586 (1980) (citing N.Y. Crim. Proc. Law § 470.05(2))). "A party must make a specific protest at the time of a claimed error to preserve an issue for appellate review." <u>Major</u>, 2012 WL 75791, at *3 (citing <u>People v.</u> <u>Robinson</u>, 88 N.Y.2d 1001, 1002, 648 N.Y.S.2d 869, 869 (1996)). New York courts have refused to reach the merits of jury-poll claims when the issue has not been properly preserved for appeal under section 470.05(2). <u>See</u> <u>People v. Flowers</u>, 274 A.D.2d 523, 523, 712 N.Y.S.2d 386, 386 (2d Dep't 2000) (court did not reach the merits of defendant's "contention that the court improperly failed to poll the jury as to the seriousness of its alleged deadlock" as it was unpreserved for appellate review; court cited section 470.05(2)).

Not only is the contemporaneous-objection rule codified by New York Criminal Procedure Law § 470.05(2) commonly used, but it is also hailed as a vital means of advancing "compelling public purposes":

> A timely objection "may lead to the exclusion of the evidence objected to, thereby making a major contribution to finality in criminal litigation." The rule also promotes society's interest in the fairness and efficiency of criminal litigation. <u>People v. Dekle</u>, 56 N.Y.2d 835, 837 (1982) ("There is neither constitutional nor jurisprudential error in

permitting guilt to be determined under a penal statute as construed by the common assumption of both attorneys and the court. To hold otherwise is to encourage gamesmanship and waste judicial resources in order to protect a defendant against a claimed error protection against which requires no more than a specific objection on his part"). In addition, busy trial judges do not and should not give as much care and attention to the many "decisions" they make without apparent disagreement by the parties as they give to decisions that directly address the protests prompting them.

People v. Colon, 46 A.D.3d 260, 263-64, 847 N.Y.S.2d 44, 48 (1st Dep't 2007) (internal citation omitted).

Here, despite petitioner's contention that he had an "absolute right" to poll the jury, no such right exists absent an explicit request by either party that the jury be polled. As the New York Court of Appeals has explained, "[t]hat a verdict may not be deemed 'finished or perfected' until it is recorded, and that it may not be validly recorded without a jury poll where one has been sought, have been uncontroversial propositions." Duffy v. Vogel, 12 N.Y.3d 169, 174, 878 N.Y.S.2d 246, 248 (2009) (internal citation omitted) (emphasis added). The Duffy court specified, moreover, that "[a]lthough the early cases . . . in fact, required an express waiver if the jury was not to be polled, the entitlement is now deemed waived in the absence of a request." Id. at 174 n.1, 878

41

N.Y.S.2d at 248. Further, even when jury-poll requests have been made but not heard, due to an outburst by defendant, the right to a jury poll is deemed to be waived and unpreserved for appellate review. See People v. Bembry, 209 A.D.2d 270, 270-71, 618 N.Y.S.2d 344, 344 (1st Dep't 1994), aff'd, 85 N.Y.2d 932, 628 N.Y.S.2d 45 (1995).

Defense counsel did not request a jury poll, nor did she object when the judge discharged the jury upon the outburst by the petitioner's brother. There was, moreover, no evidence that any of the six verdicts returned were anything other than the unanimous verdicts that they purported to be. New York courts have consistently refused to entertain unpreserved claims unless the claims stem from fundamental errors. See, e.g., People v. Coons, 75 N.Y.2d 796, 797, 552 N.Y.S.2d 94, 95 (1990) ("We reject the People's argument that this error cannot be reviewed because of defendant's failure to object at trial. Errors which 'affect the organization of the court or the mode of proceedings prescribed by law' need not be preserved and, even if acceded to, still present a question of law for this court to review." (internal quotation and citations omitted)); Simmons v. Stiles, 43 A.D.2d 417, 418, 353 N.Y.S.2d 257, 259 (1974) (citing Clark v. Donovan, 34 A.D.2d 1099, 1099, 312 N.Y.S.2d 610, 610 (1970)) ("since the trial court's

42

failure to charge as requested was 'fundamental error,' reversal is required in the interest of justice.").

A right that becomes absolute only upon explicit request by a party and that is deemed waived absent such a request must, by the plain language of case law, be requested to become "fundamental" enough to rise to the level of reversible error. Given these New York standards, we conclude that the appellate court's procedural rejection of petitioner's jury-poll complaint based on section 470.05(2) was adequate.

### iii. No Exception Applies to the Jury-Poll Claim

#### a. Cause and Prejudice

Petitioner asserts that "[b]ecause of the trial court's spontaneous discharge of the jury petitioner was deprived of an oppo[r]tunity to object." (Pet. 16). The Court has found interference by officials that made compliance with a given procedural requirement impracticable to be tantamount to a showing of cause. Murray, 477 U.S. at 488. The appellate court in Pearson's case carefully evaluated and dismissed the argument that the judge's dismissal of the jury forestalled objection, as noted

43

above. "In Engle v. Issac[, 456 U.S. 107, 130 (1982)]," moreover, "the Supreme Court declined to find sufficient 'cause' to excuse a procedural default where the defendant suggested that any effort to raise the issue before the state court would have been futile." Grigg v. Phillips, 2009 WL 2983030, at *6 (E.D.N.Y. Sept. 11, 2009), aff'd, 401 F. App'x 590 (2d Cir. Nov. 18, 2010). "Numerous courts, including courts in this Circuit, have relied upon Engle in holding that '[a]pparent futility of raising an issue does not excuse procedural default.'" Grigg, 2009 WL 2983030, at *6 (alteration in original) (quoting Jennings v. United States, 2005 WL 1387987, at *9 (S.D.N.Y. June 6, 2005)).

Even were we to suppose that the judge's discharge of the jury sufficed to constitute cause, however, petitioner would need to show that he suffered actual prejudice. By dint of the multiple unanimous verdicts rendered in the case, petitioner cannot show that the absence of a poll "created a possibility of prejudice," let alone that it "worked to his actual and substantial disadvantage." Frady, 456 U.S. at 170 (emphasis in original). Indeed, petitioner makes no meaningful effort to do so. We accordingly deem that he has failed to show either cause or prejudice.

44

b. Fundamental Miscarriage of Justice

Petitioner does not argue that the trial court's failure to poll the jury amounts to a fundamental miscarriage of justice for procedural-bar purposes. His reticence in this respect is justified. The Supreme Court has expressly stated that successful invocation of this exception is "rare," that it is to be applied only in the "extraordinary case," and that it is "tied . . . to the petitioner's innocence." Schlup, 513 U.S. at 321; see also Dretke v. Haley, 541 U.S. 386, 393 (2004) ("The cause and prejudice standard is not a perfect safeguard against fundamental miscarriages of justice. [The Court has] thus recognized a narrow exception to the cause requirement where a constitutional violation has 'probably resulted' in the conviction of one who is 'actually innocent' of the substantive offense." (citing Murray, 477 U.S. at 496)). The evidence of petitioner's guilt at trial, especially the identification testimony of Mr. Polanco and Mr. Espinal, together with his failure to offer any new exculpatory evidence, would necessarily defeat any claim of innocence that petitioner might raise. See Johnson v. Kirkpatrick, 2011 WL 3328643, at *17 (S.D.N.Y. Aug. 3, 2011) (citing cases). As a result, petitioner has not shown that our failure to consider this jury-poll claim would result in a fundamental miscarriage of justice.

45

In sum, the jury-poll claim is procedurally barred.[7]

III. The Lesser-Included-Offense Claim


Petitioner argues that the trial court erred in denying defense counsel's request that the court charge third-degree robbery as a lesser-included offense of first-degree robbery. Petitioner bases this assertion on the allegation that "[t]here was no knife visible on the videotape of the alleged robbery which supported the conclusion that petitioner did not possess a knife, and was guilty of third[-]degree robbery." (Pet. 17). He also argues that even the state "conc[eded that] the petitioner did not possess a knife on the videotape." (Id.). Respondent acknowledges that petitioner's lesser-included-offense claim has been properly exhausted. (See Res. Mem. 9). Accordingly, we grant habeas review to this second claim.


Because this claim has been adjudicated on the merits, AEDPA deference is warranted. Thus, "petitioner must show that the

---

[7] That the First Department also declined to review the claim in the interests of justice, and explained the basis for that decision, does not change this result. See, e.g., Glenn v. Bartlett, 98 F.3d 721, 724-25 (2d Cir. 1996); Gonzalez v. Lape, 2011 WL 208407, at *10 (E.D.N.Y. Jan. 21, 2011); Fong v. Poole, 522 F. Supp.2d 642, 656 (S.D.N.Y. 2007); see also Robinson v. Smith, 2011 WL 1849093, at *24 (S.D.N.Y. May 17, 2011).

decision of the state court '. . . was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or . . . [was] based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Durden v. Greene, 492 F. Supp.2d 414, 422 (S.D.N.Y. 2007) (alterations in original) (quoting 28 U.S.C. § 2254(d)(1), (2)). He cannot do so.

The Supreme Court has held that in capital cases a defendant has a constitutional right to an instruction on a lesser-included offense if the evidence warrants it. Beck v. Ala., 447 U.S. 626, 638 & n.14 (1980).[8] However, the Supreme Court expressly reserved the question of whether the Due Process Clause requires that the jury be given a lesser-included-offense charge in non-capital cases, id. at 638 n.14, and has not yet resolved that question. In the wake of Beck, the Second Circuit has also declined, in the habeas context, to rule on whether there is a constitutional right to a lesser-included-offense charge in non-capital cases, stating that it is precluded from doing so because it would be creating a new constitutional rule in violation of Teague v. Lane, 489 U.S.

---

[8] In Beck, the Court stated that "if the unavailability of a lesser included offense instruction enhances the risk of an unwarranted conviction, Alabama is constitutionally prohibited from withdrawing that option from the jury in a capital case." 447 U.S. at 638.

288 (1989). See Jones v. Hoffman, 86 F.3d 46, 48 (2d Cir. 1996)[9];

see also White v. Connolly, 2012 WL 603705, at *1-2 (S.D.N.Y. Feb.

23, 2012) (citing cases); Rincon v. Burge, 2010 WL 6789121, at *30

(S.D.N.Y. Sept. 8, 2010); Jones v. Donnelly, 487 F. Supp.2d 403,

409 (S.D.N.Y. 2007); Mannix v. Phillips, 390 F. Supp.2d 280, 295

(S.D.N.Y. 2005) (citing, inter alia, Jones, 46 F.3d at 48).[10]


Because the Supreme Court has not decided whether there is a

constitutional right to a lesser-included-offense charge in non-

capital cases, Beck, 447 U.S. at 638 n.14, the Appellate Division's

decision upholding the trial court's ruling on this matter cannot

---

[9] Since Jones was decided, the so-called "new rule" rule of
Teague has been superceded by section 2254(d)(1). See Morris v.
Reynolds, 264 F.3d 38, 46 & n.7 (2d Cir. 2001).

[10] In United States v. Zapata-Tamallo, 833 F.2d 25, 28 (2d
Cir. 1987), an appeal from a federal conviction, the Second
Circuit stated, in dictum, that due process requires that a
lesser-included-offense charge be submitted to a jury "if the
evidence would permit a jury rationally to find [a defendant]
guilty of the lesser offense and acquit him of the greater." Id.
(alteration in original) (internal quotation marks omitted)
(quoting Hopper v. Evans, 456 U.S. 605, 612 (1982)). The Second
Circuit, however, has noted that courts in this Circuit have not
treated this statement as precedent, and has declined to rule on
the issue. Jones, 86 F.3d at 48 (quoting Rice v. Hoke, 846 F.2d
160, 164 (2d Cir. 1988)); Rice, 846 F.2d at 164 (stating that the
Second Circuit "has not yet ruled on" "whether due process
requires a lesser included offense instruction in a noncapital
case"); accord Knapp v. Leonardo, 46 F.3d 170, 179 (2d Cir.
1995); Jones v. Speckard, 827 F. Supp. 139, 146 (W.D.N.Y. 1993)
(in dictum) (citing cases), aff'd mem., 14 F.3d 592 (2d Cir.
1993); Smithwick v. Walker, 758 F. Supp. 178, 187 (S.D.N.Y.
1991), aff'd mem., 948 F.2d 1278 (2d Cir. 1991).

be said to have been "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). For much the same reason, the challenged decision did not unreasonably apply "clearly established Federal law," since the Supreme Court has not spoken to the precise question and the Second Circuit has not suggested that other Supreme Court case law has, by implication, established a principle that denial of lesser-included-offense instructions in non-capital cases may violate due process. See Beck, 447 U.S. at 638 n.14; Jones, 86 F.3d at 48; Durden, 492 F. Supp. 2d at 423 (citing Williams v. Phillips, 433 F. Supp.2d 303, 315 (W.D.N.Y. 2006); Peakes v. Spitzer, 2004 WL 1366056, at *13 (S.D.N.Y. June 16, 2004); Pritchett v. Portuondo, 2003 WL 22472213, at *11 (S.D.N.Y. Oct. 31, 2003)).

A. The State Court's Determination was Correct

    Even if we ignored the absence of any legal authority for the proposition that the erroneous denial of a lesser-included-offense charge constituted a denial of due process, the result would not change. In the interest of completeness and in deference to the fact that the respondent is a pro se litigant, we note that an argument might be formulated for the notion that, based on prior precedent, even in a non-capital case an egregiously erroneous

49

failure by a trial judge to provide a lesser-included-offense charge might trigger a due-process problem if the error were sufficiently prejudicial to the defendant. That said, in this case no such showing can be made by petitioner.

Challenges to jury charges are generally not of constitutional dimension, and habeas relief is not usually granted for a claim that a jury charge violated state law. See, e.g., McGuire, 502 U.S. at 71-73 (citing Marshall v. Lonberger, 459 U.S. 422, 438 n.6 (1983)). Nonetheless, if a defective instruction "infected the entire trial," the error may rise to the level of a due-process violation. Waddington v. Sarausad, 555 U.S. 179, 190-91 (2009) (quotation omitted); see also Cupp v. Naughten, 414 U.S. 141, 146-47 (1973); Davis v. Strack, 270 F.3d 111, 123, 131-32 (2d Cir. 2001). Otherwise stated, the question is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Cupp v. Naughten, 414 U.S. at 147; accord Jackson v. Edwards, 404 F.3d 612, 624-25 (2d Cir. 2005) (noting that courts must examine whether denial of a justification charge was "'sufficiently harmful to make the conviction unfair'" (quoting Davis, 270 F.3d at 124)).

By way of example, a criminal defendant has a constitutional right to a "meaningful opportunity to present a complete defense."

Crane v. Ky., 476 U.S. 683, 690 (1986) (citing Cal. v. Trombetta,
467 U.S. 479, 485 (1984)). The right to present a defense is a
"'minimum essential[] of a fair trial.'" United States v. Almonte,
956 F.2d 27, 30 (2d Cir. 1992) (quoting Chambers v. Miss., 410 U.S.
284, 294 (1973)). As part of this constitutional right, the
defendant is entitled to "'a jury charge that reflects any defense
theory for which there is a foundation in the evidence.'" United
States v. Abcasis, 45 F.3d 39, 42 (2d Cir. 1995) (internal
quotation marks omitted) (quoting United States v. Johnson, 994
F.2d 980, 988 (2d Cir. 1993)); accord, e.g., United States v. Gil,
297 F.3d 93, 107 (2d Cir. 2002) ("'A criminal defendant is entitled
to a jury charge that reflects his defense. A conviction will not
be overturned for refusal to give a requested charge, however,
unless that instruction is legally correct, represents a theory of
defense with basis in the record that would lead to acquittal, and
the theory is not effectively presented elsewhere in the charge.'"
(quoting United States v. Vasquez, 82 F.3d 574, 577 (2d Cir.
1996))). The defendant has a right to such an instruction even if
the trial court believes that the defense is "'tenuous.'" United
States v. Bok, 156 F.3d 157, 163 (2d Cir. 1998) (quoting United
States v. Dove, 916 F.2d 41, 47 (2d Cir. 1990)).


      In this case, even assuming the viability of such a legal
theory, we find no evidentiary basis to sustain it. As the Second

Circuit noted in both <u>Jackson</u> and <u>Davis</u>, the court first considers whether state law required an instruction that the state court failed to grant. <u>See</u> <u>Jackson</u>, 404 F.3d at 621-24; <u>Davis</u>, 270 F.3d at 124-31. Since the record did not compel the requested charge under New York law, petitioner's lesser-included-offense claim must fail.

Section 300.50(1) of the New York Criminal Procedure Law addresses the appropriateness of lesser-included-offense instructions, stating that,

> [i]n submitting a count of an indictment to the jury, the court in its discretion may, in addition to submitting the greatest offense which it is required to submit, submit in the alternative any lesser included offense if there is a reasonable view of the evidence which would support a finding that the defendant committed such lesser offense but did not commit the greater. If there is no reasonable view of the evidence which would support such a finding, the court may not submit such lesser offense. Any error respecting such submission, however, is waived by the defendant unless he objects thereto before the jury retires to deliberate.

N.Y. Crim. Proc. Law § 300.50(1). In <u>People v. Glover</u>, 57 N.Y.2d 61, 453 N.Y.S.2d 660 (1982), the Court of Appeals read the discretionary language of section 300.50(1) as reflecting an entitlement of a defendant to such a charge in defined circumstances, and it specified a test for determining whether the

defendant is entitled to a lesser-included-offense charge:

> To establish entitlement to a lesser included
> offense charge, the defendant must make two
> showings. First, it must be shown that the
> additional offense that he desires to have
> charged is a "lesser included offense", i.e.,
> that it is an offense of lesser grade or
> degree and that in all circumstances, not only
> in those presented in the particular case, it
> is impossible to commit the greater crime
> without concomitantly, by the same conduct,
> committing the lesser offense. That
> established, the defendant must then show that
> there is a reasonable view of the evidence in
> the particular case that would support a
> finding that he committed the lesser offense
> but not the greater.

Id. at 63, 453 N.Y.S.2d at 661.

When determining whether a jury should be charged with a lesser-included offense, the court must examine the evidence in the light most favorable to the defendant, although the jury may accept or reject any of the evidence it is given. People v. Galvin, 104 A.D.2d 527, 528, 479 N.Y.S.2d 896, 898 (3d Dep't 1984) (citing People v. Henderson, 41 N.Y.2d 233, 236, 391 N.Y.S.2d 563, 566 (1976)), aff'd as modified, 65 N.Y.2d 761, 492 N.Y.S.2d 25 (1985). The focus of the analysis is on whether a jury could reasonably acquit defendant of the greater crime and convict him of the lesser crime, not whether there is persuasive evidence that defendant was guilty of the greater crime. See, e.g., People v. Hartman, 4 A.D.3d 22, 26-27, 772 N.Y.S.2d 396, 400 (3d Dep't 2004) (citing People v.

53

Van Norstrand, 85 N.Y.2d 131, 136, 623 N.Y.S.2d 767, 770 (1995)).
Here, an examination of the record amply supports the Appellate
Division's conclusion.

The Appellate Division held that: "[t]he trial court properly
denied defendant's request to submit third-degree robbery as a
lesser included offense, since there was no reasonable view of the
evidence that defendant used physical force other than the
threatened use of a knife to retain the property he had
shoplifted." Pearson, 67 A.D.3d at 600-01, 889 N.Y.S.2d at 180
(citing People v. James, 11 N.Y.3d 886, 888, 874 N.Y.S.2d 864, 865-
66 (2008)). The court based this determination not only on the
witnesses' consistent testimony that a knife had been used, but
also on the video evidence and the discovery of a knife near the
scene of the robbery:

> Although the surveillance videotape of the
> robbery did not present a clear view of the
> knife in defendant's hand, the videotape
> supported the security guards' testimony that
> they retreated when they saw the knife. There
> is no reasonable view that defendant was able
> to force the two guards to retreat merely by
> physical menace. In addition, a knife was
> recovered under circumstances indicating that
> defendant had discarded it.

Id. at 601, 889 N.Y.S.2d at 180-81.

54

The Appellate Division's decision in this case is plainly consistent with New York law. In New York, "[a] person is guilty of robbery in the third degree when he forcibly steals property." N.Y. Penal Law § 160.05. A person is guilty of first-degree robbery under New York law when "he forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime . . . [i]s armed with a deadly weapon" or "[u]ses or threatens the immediate use of a dangerous instrument." N.Y. Penal Law § 160.15. Here, the appellate court reasonably found, based on the evidence, that there was no indication of force apart from the waving of a knife, and hence a jury could not find that petitioner completed the lesser, but not the greater, offense. Consequently, even if we assume -- against the weight of caselaw -- that failure to charge lesser-included offenses may violate due process, it is clear that the Appellate Division's well-grounded finding properly dispensed with petitioner's claim in the instant case.

IV. Spillover-Effect Claim

Petitioner argues that "[his] conviction for weapons possession and menacing are factually entwined with the tainted first[-]degree[-]robbery conviction because they are predicated on petitioner's alleged possession of a knife." (Pet. 17). As a

55

result, petitioner posits, "[t]he [s]pillover [e]ffect of the [c]ourt's [e]rror [o]n the [l]esser [i]ncluded [c]harge [r]equires [r]eversal of [p]etitioner's [c]onviction for [c]riminal [p]ossession of a [w]eapon in the [t]hird [d]egree and [m]enacing in the [s]econd [d]egree." (<u>Id.</u>). According to petitioner, "[t]his spillover effect denied [him] due process and a fair trial." (<u>Id.</u>). Respondent contends that this claim is not exhausted because it was not cloaked in constitutional garb upon direct appeal (Res. Mem. 10-11), and that it is meritless. (<u>Id.</u> at 23-24).

Petitioner's final claim is wholly contingent upon a favorable finding on his second claim. Having found no error in the trial court's rejection of petitioner's request to issue a lesser-included-offense charge, the appellate court did not address this spillover-effect claim. Nevertheless, because of the symbiosis that ties petitioner's third claim to his second, which petitioner argued in explicit constitutional terms, he adequately alerted the appellate court to the constitutional status of his last claim. Deference to petitioner's <u>pro se</u> status warrants such an inference.

This logic is a double-edged sword, however -- just as petitioner's third claim may be deemed exhausted through its parasitic ties to the second, so too must the third claim fail because it is entirely predicated on a finding of error with

56

respect to the lesser-included-offense charge. As we have found no reason to disturb the state appellate court's holding of no error, so we must recommend dismissal of this claim.

<u>CONCLUSION</u>

For the reasons discussed above, we recommend that the writ be denied and the petition dismissed. We further recommend that no certificate of appealability issue, as petitioner fails to raise any issue worthy of appellate review.

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, the parties shall have (14) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies to be delivered to the chambers of the Honorable Barbara S. Jones, Room 1920, 500 Pearl Street, New York, New York 10007-1312, and to the chambers of the undersigned, Room 1670, 500 Pearl Street, New York, New York 10007-1312. Failure to file timely objections may constitute a waiver of those objections both in the District court and on later appeal to the United States Court of Appeals. <u>See</u> <u>Thomas v. Arn</u>, 470 U.S. 140, 150 (1985); <u>Small v. Sec'y of Health & Human Servs.</u>, 892 F.2d 15, 16 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

57

DATED:     New York, New York
           August 3, 2012

                                   RESPECTFULLY SUBMITTED,


                                   _____
                                   MICHAEL H. DOLINGER
                                   UNITED STATES MAGISTRATE JUDGE




Copies of the foregoing Order have been sent today via U.S. Mail
to:

Mr. Lonnie Pearson
08-A-0279
Elmira Correctional Facility
1879 Davis Street
P.O. Box 500
Elmira, NY 14902


Lisa Ellen Fleischmann, Esq.
Assistant Attorney General
New York State Office of the Attorney General
120 Broadway
New York, NY 10271-0332